## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY JACKSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>VENTURE 475, LLC d/b/a SYNERGY FINANCE, SYNERGY FINANCIAL, and QUICK ACCESS CAPITAL, and DOES 1-20,<br><br>    Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY DEMANDED** |

Now comes the Plaintiff, JEREMY JACKSON ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for his Class Action Complaint against the Defendants, VENTURE 475, LLC d/b/a SYNERGY FINANCE, SYNERGY FINANCIAL, and QUICK ACCESS CAPITAL, and DOES 1-20 (collectively referred to herein as "Defendants"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1.     This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, resulting from the illegal actions of

Defendants, in negligently, knowingly, and/or willfully placing through their agent(s), automated sales, solicitation, and/or other telemarketing calls to Plaintiff's cellular telephone, in violation of the TCPA and its related regulations, specifically the National Do-Not-Call Registry and internal do-no-call provisions of 47 C.F.R. 64.1200(c) and (d), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      According to the Federal Communications Commission's website, accessed on July 12, 2022 at http://www.fcc.gov/consumers/guides/stop-unwanted-calls-texts-and-faxes:

> The national Do Not Call list protects landline and wireless phone numbers. You can register your numbers on the national Do Not Call list at no cost… Telemarketers must remove your numbers from their call lists and stop calling you within 31 days from the date you register. Your numbers will remain on the list until you remove them or discontinue service – there is no need to re-register numbers.

3.      The TCPA was designed to prevent telephone calls like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 744 (2012).

4.     In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on the TCPA's purpose).

5.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13.

6.     Persons like Plaintiff have no control to stop unsolicited telemarketing calls placed to them, whether automated or otherwise.

7.     In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone

3

dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random *or* sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

8.    In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

9.    Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg. 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

10.    The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons'

on the other." Ashl*and Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

11.     Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73 FR 51164-01, 51167 (Aug. 29, 2008).

12.     Predictive dialers have long been considered automatic telephone dialing systems by the FCC. In fact, the FCC's first ruling on the TCPA in 1992 recognized the importance of restrictions on equipment such as predictive dialers. Referring in part to "predictive dialers" the FCC then opined that "both live [solicitation calls, such as with a predictive dialer] and artificial or prerecorded voice telephone solicitations should be subject to significant restrictions." 7 FCC Rcd. 8752, 8756 (F.C.C. September 17, 1992).

13.     Since 2003, the FCC has definitively held that predictive dialers qualify as an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶¶ 131-134 (2003).

14.    Similar to other autodialers, predictive dialers also call from a stored list of phone numbers, but utilize algorithms to "predict" when an agent will receive a live answer.

15.    Rather than an agent manually dialing numbers, predictive dialers are generally used by loading a list of numbers into the dialer which then dials the numbers and forwards the calls to agents. An agent then signals readiness by logging into the phone system, at which point they will be joined to a campaign and be put in a queue to be forwarded a call once it connects with a consumer.

16.    The FCC describes predictive dialers as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call
> …
> a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers
> …
> Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call…Predictive dialers reduce the amount of down

6

> time for sales agents, as consumers are more likely to be
> on the line when the telemarketer completes a call.

*Id.* at ¶¶ 8, fn. 31, 131, and 146.

17.    Plaintiff and the members of the proposed classes defined below received telemarketing calls placed to their cellular telephones, placed by or on behalf of Defendants, which were made without the prior express consent of the recipients of said calls.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under a law of the United States, the TCPA.

19.    This Court has personal jurisdiction over Defendants because they are actively engaged in selling their products and services throughout the Middle District of Pennsylvania and the United States.

20.    This Court also has personal jurisdiction over Defendants because they caused the telephone calls at issue in this case to be placed to Plaintiff, who lives within the Middle District of Pennsylvania, at a telephone number bearing a Pennsylvania area code.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## **PARTIES**

22.     Plaintiff is an individual who was at all relevant times residing in State College, Centre County, Pennsylvania.

23.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

24.     On information and belief, Defendant VENTURE 475, LLC d/b/a SYNERGY FINANCE, SYNERGY FINANCIAL, and QUICK ACCESS CAPITAL ("Venture 475") is a corporation of the State of New York, which is not licensed to do business in Pennsylvania, and whose principal place of business is located in New York, New York.

25.     On information and belief, at all times relevant hereto, Venture 475 was at all relevant times engaged in the marketing and solicitation of financial and/or loan services.

26.     Defendants are "persons" as defined by 47 U.S.C. § 153(39).

27.     The true names and capacities of the Defendants sued herein as DOES 1-20 are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

28.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTS COMMON TO ALL COUNTS

29.     On or about December 4, 2006, Plaintiff successfully registered his telephone number ending in -0282 with the National Do-Not-Call Registry.

30.     During or about August of 2018, Defendants began placing unsolicited automated telemarketing calls to Plaintiff's cellular telephone.

31.     Plaintiff had not previously sought out Defendants' services nor had Plaintiff attempted to retrieve information from Defendants about their services. Therefore, Plaintiff did not have an "established business relationship" with Defendants, as set forth in 16 C.F.R. § 310.4(b)(iii)(B).

32.     On multiple occasions when Plaintiff answered Defendants' calls, he heard a prerecorded message before a live representative of Defendants came on the line, which is indicative of an automated telephone dialing system.

33.     On one occasion, Defendants' prerecorded message stated, in part, that Plaintiff should press "0" for business loan information. On another occasion,

Defendants' prerecorded message stated, in part, that Plaintiff should press "1" to speak to a funding specialist.

34.    From August 2018 to July 2019, Plaintiff received at least 12 unauthorized, automated telemarketing calls from Defendants.

35.    Upon information and belief, Defendants placed the same or substantially similar unsolicited telephone calls *en masse* to thousands of cellular telephone subscribers nationwide in an effort to market Venture 475's products and services.

36.    Upon information and belief, Defendants placed such calls for the purposes of financial gain.

37.    Upon information and belief, Defendants constructed the content of the solicitation calls, including the script to be followed by Defendants' representatives during the calls.

38.    Upon information and belief, the dialing system used by Defendants to place the calls also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

39.    After one of Defendants' calls to Plaintiff, Defendants sent Plaintiff a text message, which contained the contact information of Alex Watson, an Account Executive with Defendant.

40.     In response to said text message, Plaintiff replied, stating that he was not interested in Defendants' services and requesting that Defendants place his number on their internal do-not-call lists.

41.     Plaintiff also requested that a written copy of Defendants' do-not-call policy be sent to him via email, but Defendants failed to comply with this request.

42.     Upon information and belief, the marketing text messages were sent by Defendants for the purposes of financial gain.

43.     Defendants frequently sent Plaintiff emails from info@synergyfinancellc.com. Plaintiff responded to Defendants' emails by stating that he was not interested in Defendants' services, requesting that his number be placed on Defendants' do-not-call list, and requesting a written copy of Defendants' do-not-call policy.

44.     Despite Plaintiff's unequivocal requests that Defendants cease calling him and that he be placed on Defendants' internal do-not-call list, Plaintiff continued receiving unauthorized, automated telemarketing calls from Defendants.

45.     Plaintiff was not interested in the goods and services Defendants were offering in such solicitations. However, Defendants' calls and text messages continued.

46.     To date, Plaintiff has received at least 40 unauthorized, automated telemarketing calls from Defendants.

47.    On information and belief, based upon Plaintiff's experiences in receiving Defendants' telephone calls and messages as set forth above, Defendants' calls and messages to Plaintiff were placed through the use of an automatic telephone dialing system ("ATDS") as defined in 47 U.S.C. § 227(a)(1).

48.    Plaintiff never gave Defendants his prior express request, invitation, or permission for Defendants to place telemarketing calls and text messages to him, nor did Plaintiff have an established business relationship with Defendants.

49.    Defendants' unsolicited telemarketing calls and text messages were a nuisance to Plaintiff.

50.    Defendants' calls and text messages were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

51.    As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, invading Plaintiff's privacy; intruding into his personal affairs; intrusion upon and occupation of the capacity of Plaintiff's telephone line without permission; wasting Plaintiff's time; and aggravation, annoyance, inconvenience, frustration, and similar categories of damages. The calls and text messages Plaintiff received from Defendants also constituted a form of the precise harm that Congress was attempting to prohibit with the TCPA, which was designed to remedy invasions of privacy and nuisances caused to Americans by automated telemarketing calls sent

without consent. Plaintiff actually suffered this precise injury by receiving the unwanted calls and text messages, and having his privacy so invaded through a disturbance of his solitude, and unwanted intrusion of his technology and personal space. Accordingly, Plaintiff has Article III standing to seek redress for these violations in Federal Court.

## **CLASS ALLEGATIONS**

52.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated, as a member of the proposed Classes defined below (collectively, "the Classes").

53.    Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of a proposed class (the "ATDS Class"), defined as follows:

> All persons or entities within the United States who received calls to their cellular telephone numbers, placed by or on behalf of Defendants, using an automatic telephone dialing system and/or an artificial or prerecorded voice, without the consent of the recipient, within four years prior to the filing of this Complaint through the date of class certification.

54.    Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of a proposed class (the "National Do-Not-Call Class"), defined as follows:

> All residential telephone subscribers within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least 31 days, who had not granted Defendants prior express consent nor had

a prior established business relationship with Defendants, or who had revoked such consent and prior established business relationship, who received more than one call made by or on behalf of Defendants that promoted Defendants' products or services, within any 12-month period, within four years prior to the filing of this Complaint through the date of class certification.

55.    Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of a proposed class (the "Internal Do-Not-Call Sub-Class"), defined as follows:

All residential telephone subscribers within the United States who requested that Defendants not place calls to them for telemarketing purposes, who received at least one such call made by or on behalf of Defendants that promoted Defendants' products or services, more than 30 days after the date such request was made, and within four years prior to the filing of this Complaint through the date of class certification.

56.    Defendants, their employees and agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

57.    The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Classes

14

include thousands of members, if not more. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendants.

58.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

59.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

60.     There are questions of law and fact common to the ATDS Class affecting the parties to be represented. The questions of law and fact common to the ATDS Class predominate over questions which may affect individual members of the ATDS Class and include, but are not necessarily limited to, the following:

     a.     Whether the ATDS Class members' telephone numbers were called by Defendants using an automatic telephone dialing system or an artificial or prerecorded voice;

     b.     Whether Defendants obtained the prior express consent of the ATDS Class members to call their cellular telephone numbers using an automatic telephone dialing system or an artificial or prerecorded voice;

c.      Whether Defendants' calls to the ATDS Class members were placed for emergency purposes;

d.      Whether Defendants violated the TCPA, 47 U.S.C. § 227, et seq.;

e.      Whether Defendants' conduct was knowing and/or willful;

f.      Whether Plaintiff and the members of the ATDS Class were damaged thereby, and the extent of damages for such violation; and

g.      Whether Defendants and their agent(s) should be enjoined from engaging in such conduct in the future.

61.     There are questions of law and fact common to the National Do-Not-Call and Internal Do-Not-Call Classes affecting the parties to be represented. The questions of law and fact common to the National Do-Not-Call and Internal Do-Not-Call Classes predominate over questions which may affect individual members of the National Do-Not-Call and Internal Do-Not-Call Classes and include, but are not necessarily limited to, the following:

a.      Whether the National Do-Not-Call and Internal Do-Not-Call Classes' members' telephone numbers were called by Defendants without Defendants having obtained prior express consent or an established business relationship with the National Do-Not-Call and Internal Do-Not-Call Classes' members;

16

b.    Whether the National Do-Not-Call Class members' telephone numbers were called by Defendants more than 30 days after they registered such numbers on the National Do-Not-Call Class registry;

c.    Whether the Internal Do-Not-Call Class members' telephone numbers were called by Defendants more than 30 days after the date the members requested their numbers be added to Defendants' internal do-not-call list;

d.    Whether Defendants had a written policy, available upon demand, for maintaining an internal do-not-call list;

e.    Whether Defendants violated the TCPA, 47 U.S.C. § 227, et seq., by placing telephone calls to the National Do-Not-Call Class members without proper consent or an established business relationship;

f.    Whether Defendants violated the TCPA, 47 U.S.C. § 227, et seq., by placing telephone calls to the Internal Do-Not-Call Class members without proper consent or an established business relationship;

g.    Whether Defendants' conduct was knowing and/or willful;

h. Whether Plaintiff and the members of the National Do-Not-Call and Internal Do-Not-Call Classes were damaged thereby, and the extent of damages for such violation; and

i. Whether Defendants and its agent(s) should be enjoined from engaging in such conduct in the future.

62. As a resident of the United States whose cellular telephone number was called by Defendants using an automatic telephone dialing system and an artificial or prerecorded voice on multiple occasions, without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the ATDS Class.

63. As a resident of the United States whose telephone number was called more than once in a 12-month period, and more than 31 days after Plaintiff had registered his telephone number on the National Do-Not-Call Registry, Plaintiff is asserting claims that are typical of the National Do-Not-Call Class.

64. As a resident of the United States who requested that Defendants not place calls to him, who received at least one call made by or on behalf of Defendants that promoted Defendants' products or services, more than 30 days after the date Plaintiff's request was made, Plaintiff is asserting claims that are typical of the Internal Do-Not-Call Class.

65. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Classes.

18

66.    Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions.

67.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all of the Classes' members is impracticable. Even if every one of the Classes' members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

68.    The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties

to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

69.     Notice may be provided to the Classes' members by direct mail and/or email notice, publication notice and by other reasonable means.

70.     Defendants have acted or refused to act in respect generally applicable to the Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

71.     Defendants failed to comply with the requirements of the TCPA and its regulations, including but not limited to 47 U.S.C. § 227(b), and 47 C.F.R. § 64.1200(c) and (d), as to the ATDS Class, National Do-Not-Call Class, and Internal Do-Not-Call Class members, with respect to the above-alleged transactions.

72.     47 U.S.C. § 227(b)(1)(A)(iii), provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States…

73.     47 C.F.R. § 64.1200(c)(2) provides that:

[n]o person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

74.  47 C.F.R. § 64.1200(d) provides that:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
…
(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

75.  In multiple instances, Defendants placed calls to the ATDS Class members using an automatic telephone dialing system, without the members' prior express consent, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*

76.  In multiple instances, Defendants placed calls to the National Do-Not-Call Class members without the members' consent, and after the members registered

with the federal government's Do-Not-Call list, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. 64.1200(c).

77.     In addition, on information and belief, Defendants have not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Defendants, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. 64.1200(d).

78.     The size and definition of the Classes can be identified through Defendants' records and/or Defendants' agents' records.

**COUNT I**
**NEGLIGENT VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of the ATDS Class)**

79.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 78 above as if reiterated herein.

80.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and 47 U.S.C. § 227(b)(1)(A)(iii).

81.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

22

82.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

**COUNT II**
**KNOWING AND/OR WILLFUL VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of the ATDS Class)**

83.    Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 78 above as if reiterated herein.

84.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*, and 47 U.S.C. § 227(b)(1)(A)(iii).

85.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

86.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

**COUNT III**
**NEGLIGENT VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 C.F.R. 64.1200(c)**
**(On Behalf of the National Do-Not-Call Class)**

87.    Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 78 above as if reiterated herein.

88.    The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and the implementing regulations of 47 C.F.R. 64.1200(c).

89.    As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

90.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

**COUNT IV**
**KNOWING AND/OR WILLFUL VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 C.F.R. 64.1200(c)**
**(On Behalf of the National Do-Not-Call Class)**

91.    Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 78 above as if reiterated herein.

92.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*, and the implementing regulations of 47 C.F.R. 64.1200(c).

93.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

94.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

**COUNT V**
**NEGLIGENT VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 C.F.R. 64.1200(d)**
**(On Behalf of the Internal Do-Not-Call Class)**

95.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 78 above as if reiterated herein.

96.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*, and the implementing regulations of 47 C.F.R. 64.1200(d).

97.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

98.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

**COUNT VI**
**KNOWING AND/OR WILLFUL VIOLATION OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 C.F.R. 64.1200(d)**
**(On Behalf of the Internal Do-Not-Call Class)**

99.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 78 above as if reiterated herein.

100.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*, and the implementing regulations of 47 C.F.R. 64.1200(d).

101.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

102.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

    a.     An order certifying the ATDS Class, the National Do-Not-Call Class, and the Internal Do-Not-Call Class and appointing Plaintiff as Representative of the ATDS Class, the National Do-Not-Call Class, and the Internal Do-Not-Call Class;

    b.     An order certifying the undersigned counsel as the ATDS Class Counsel, the National Do-Not-Call Class Counsel, and the Internal Do-Not-Call Class Counsel;

    c.     An order requiring Defendants, at their own cost, to notify all members of the ATDS Class, the National Do-Not-Call Class, and the Internal Do-Not-Call Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

    d.     Judgment against Defendants in the amount of $500.00 in statutory damages for each and every negligent violation of the TCPA by Defendants;

    e.     Judgment against Defendants in the amount of $1,500.00 in statutory damages for each and every knowing and/or willful violation of the TCPA by Defendants;

f.    An order for injunctive relief prohibiting such conduct by Defendants in the future;

g.    Judgment against Defendants for Plaintiff's court costs and other litigation costs; and

h.    Any other relief deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues and causes of action in this action which are so triable.


RESPECTFULLY SUBMITTED,

JEREMY JACKSON

By:    /s/ Todd M. Friedman
       Attorney for Plaintiff
       Law Offices of Todd M. Friedman, P.C.
       21301 Ventura Blvd., Suite 340
       Woodland Hills, CA 91364
       Phone: 323-306-4234
       Fax: 866-633-0228
       tfriedman@toddflaw.com